# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

IN RE:

DEXTER DAY GILBERT,                    CASE NO.: 18-40399-KKS
                                       CHAPTER 7

       Debtor.

_____/

NUTRIEN AG SOLUTIONS, INC.             ADV. NO.: 18-04023-KKS
F/K/A CROP PRODUCTION
SERVICES, INC.,

       Plaintiff,

v.

DEXTER DAY GILBERT,

       Defendant.

_____/

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION IN SUPPORT OF JUDGMENT IN FAVOR OF DEFENDANT

THIS MATTER came before the Court for trial on April 6, 2021.

The Court issues these Findings of Fact and Conclusions of Law pursuant

to Fed. R. Civ. P. 52(a)(1) made applicable by Fed. R. Bankr. P. 7052.

## SUMMARY

Defendant had been buying farm supplies from Plaintiff on credit

since 2012. By March of 2017, Defendant owed Plaintiff over $100,000.00 for supplies for his 2016 crops and was in default on his payments. To pay this debt, in July of 2017 Defendant executed an assignment of proceeds from a government crop program on certain property he was farming in favor of Plaintiff. In exchange, Plaintiff did not sue Defendant. It later turned out that Defendant did not have the legal right to assign those government crop proceeds. In this adversary proceeding, Plaintiff has tried to show that Defendant's execution of the assignment was a false and/or fraudulent statement made with intent to deceive, on which Plaintiff justifiably relied, to its detriment.

The parties presented evidence and testimony at trial in addition to stipulating to numerous facts prior to trial.[1] At the conclusion of the trial, the Court required the parties to submit proposed findings of fact and conclusions of law, which they have.[2] Having reviewed the evidence and testimony, the parties' proposed Findings of Fact and Conclusions of Law and relevant case law, and having considered the demeanor and credibility of the witnesses at trial, the Court finds that Plaintiff failed to

---

[1] *See Joint Statement of Undisputed Facts*, ECF No. 78.
[2] *Plaintiff's Notice of Filing Proposed Findings of Fact and Conclusions of Law*, ECF No. 107; *Defendant's Proposed Findings of Fact and Conclusions of Law*, ECF No. 108.

prove each element of its claims by a preponderance of the evidence. For the reasons stated below, the Court will enter judgment in favor of Defendant.

## PROCEDURAL HISTORY

Defendant, Dexter Day Gilbert, filed a Chapter 7 bankruptcy petition on July 20, 2018.[3] Plaintiff, Nutrien Ag Solutions, Inc. f/k/a Crop Production Services, Inc. ("Nutrien Ag"), initiated this Adversary Proceeding on December 6, 2018 and filed its second amended complaint ("Complaint"), on which the case was tried, on May 9, 2019.[4]

In its Complaint, Nutrien Ag seeks to except Defendant's debt from discharge under various subsections of 11 U.S.C. § 523. In Count I, Nutrien Ag alleges that Defendant's debt is nondischargeable under § 523(a)(2)(A) because Defendant obtained the forbearance through misrepresentation and/or false pretenses. In Count II, Nutrien Ag claims the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because Defendant obtained the forbearance through actual fraud. In Count III, Nutrien Ag asserts the debt is nondischargeable under 11 U.S.C.

---

[3] *Voluntary Petition*, *In re Gilbert*, No. 18-40399-KKS (Bankr. N.D. Fla. July 20, 2018), ECF No. 1.
[4] *Complaint Pursuant to 11 U.S.C. § 523(a)(2)(A) and 523(a)(6)*, ECF No. 1; *Second Amended Complaint Pursuant to 11 U.S.C. § 523(a)(2)(A) and 523(a)(6)*, ECF No. 43.

§ 523(a)(6) because in obtaining the forbearance, Defendant willfully and maliciously injured Nutrien Ag. In Count IV, Nutrien Ag alleges that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(B) because Defendant made materially false statements in writing concerning his or an insider's financial condition.

## FINDINGS OF FACT

Defendant has farmed various crops on his own land and various rental lands for decades.[5] Since 2012, Defendant financed his farming operation in part by buying farming products from Nutrien Ag on credit.[6] Defendant would customarily obtain products from Nutrien Ag, plant, grow, and harvest crops, and then repay Nutrien Ag at the end of each crop year from the crop proceeds. Over the years, Defendant also funded his farming operations with crop disaster assistance from the United States Department of Agriculture ("USDA") under its "Non-Insured Crop Disaster Assistance Program" ("NAP").

Nutrien Ag last sold products to Defendant on credit in 2016.[7] By

---

[5] ECF No. 78, ¶ 1.

[6] *Id.* ¶ 2.

[7] *Id.* The repayment terms for these transactions were governed by a "*Commercial Credit Agreement/Terms and Conditions*" ("Agreement") signed on March 14, 2012. *See* Pl. Ex. 8, at pp. 5–6, ECF No. 93-8.

the end of the 2016 crop year, Defendant owed Nutrien Ag more than $100,000.00.[8] Although it would have been customary for Defendant to pay Nutrien Ag from proceeds of the sale of his 2016 crops, Defendant did not do so because he suffered what he described as a catastrophic crop failure. Defendant made his last partial payment to Nutrien Ag in March of 2017.[9] After being unable to make additional payments, Defendant told Nutrien Ag's representative, "Andy" Armstrong, that he was going to do everything possible to pay his debt.

In 2017, as usual, Defendant named each tract of land a "farm" and listed various friends and family members, including his nephew, Ja'Drian L. Gilbert ("Ja'Drian"), as "producers" on the NAP applications.[10] Defendant submitted applications to the USDA for 2017 NAP proceeds for each of the "farms" he was operating, including the one in Ja'Drian's name. By March of 2017, Defendant had pledged the NAP proceeds from all land he was farming, except the farm in Ja'Drian's name, to secure a $1.1 million credit line with Trinity Bank. After

---

[8] ECF No. 78, ¶ 3.

[9] *Id.* at ¶ 4; Pl. Ex. 3, ECF No. 93-3. According to Nutrien Ag, as of July 20, 2018, the date he filed his Chapter 7 Petition, Defendant owed Nutrien Ag $121,456.89. ECF No. 43, ¶ 9; Pl. Ex. 8, at p. 2, ECF No. 93-8.

[10] Defendant testified that has acted as a father figure to Ja'Drian since Ja'Drian's father, Defendant's brother, died when Ja'Drian was a boy.

discussions with Nutrien Ag on how he was going to repay the debt he still owed Nutrien Ag for his 2016 crops, on or about July 26, 2017, Defendant signed, as power of attorney for Ja'Drian, a document entitled "Assignment of Payment," pledging up to $125,000.00 of the NAP proceeds from the farm in Ja'Drian's name to Nutrien Ag ("Assignment").[11] Defendant admits that in exchange for the Assignment, Nutrien Ag gave him extra time to pay the debt for his 2016 crop year. Wendy Glass, a Special Assets Manager for Nutrien Ag, testified at trial that without the Assignment Nutrien Ag would have filed suit against Defendant.

Ja'Drian never actively farmed.[12] In fact, Ja'Drian was physically incapable of farming during most of the 2017 crop year because he was incarcerated.[13] In early 2018, the USDA denied Defendant's application for NAP proceeds for the farm in Ja'Drian's name on the basis that farming under another person's name as "producer" violated USDA rules.[14] That denial left Defendant with no means to repay Nutrien Ag.

---

[11] Pl. Ex. 1, ECF No. 93-1; ECF No. 78, ¶ 6.

[12] Apparently, none of the other family or friends Debtor listed on NAP applications actively participated in farming.

[13] Ja'Drian was incarcerated beginning on March 20, 2017; he remained in custody until he was acquitted by a jury in 2019. Pl. Ex. 11, at pp. 2–5, ECF No. 96-1.

[14] ECF No. 78, ¶ 7. On May 29, 2018, the United States, on behalf of the USDA, filed criminal charges against Defendant, alleging that between February of 2016 and January 18, 2017 he

Defendant testified that before receiving notice in 2018 that his NAP application in Ja'Drian's name was denied he did not know that filing applications in friends' and family's names was improper. After the government denied the NAP application in Ja'Drian's name and informed Defendant that such applications were prohibited, Defendant submitted no additional NAP applications in the names of friends or family.

## CONCLUSIONS OF LAW

### A.    Nutrien Ag has not proven that Debtor made a false representation with intent to deceive on which Nutrien Ag justifiably relied to its detriment.

Section 523(a)(2)(A) excepts from discharge a debt "for . . . an extension, renewal, or refinancing of credit to the extent obtained by— (A) false pretenses, a false representation, or actual fraud . . . ."[15] Most courts have held that a forbearance is an "extension of credit" under 11 U.S.C. § 523(a)(2)(A).[16] A party seeking a ruling that a debt is

---

"did willfully and knowingly steal and purloin" NAP proceeds to which he was not entitled. Pl. Ex. 5, at p. 1, ECF No. 93-5. Defendant assisted the government's investigation of the charges against him; he entered a Plea Agreement in which he admitted receiving $919,551.00 in proceeds on account of fourteen (14) NAP applications. Pl. Ex. 6, at p. 7, ECF No. 93-6.

[15] 11 U.S.C. § 523(a)(2)(A) (2019). This Section does not apply to statements made in writing.
[16] *E.g.*, *Ojeda v. Goldberg*, 599 F.3d 712, 718 (7th Cir. 2010); *Field v. Mans*, 157 F.3d 35, 45 (1st Cir. 1998); *Chen v. Hay Phat (In re Phat)*, 623 B.R. 371, 377–78 (Bankr. E.D. Pa. 2021); *Lenox Pines, LLC v. Smith (In re Smith)*, Ch. 7 Case No. 17-67324-LRC, Adv. No. 18-05005-LRC, 2021 WL 1234245, at *5 (Bankr. N.D. Ga. Mar. 31, 2021); *Codisco, Inc. v. Marx (In re Marx)*, 138 B.R. 633, 636 (Bankr. M.D. Fla. 1992).

nondischargeable under § 523(a)(2)(A) must prove by a preponderance of the evidence that (1) the debtor made a false representation, (2) with intent to deceive the creditor, (3) the creditor relied on the misrepresentation, (4) the reliance was justified, and (5) the misrepresentation caused the creditor's loss.[17] Nutrien Ag has failed to prove any of these elements.

As to the first two elements: that Debtor made a false representation or that he had any intent to deceive Nutrien Ag. A false representation must be made knowingly and fraudulently.[18] The evidence supports Defendant's testimony that when he gave Nutrien Ag the Assignment he genuinely believed he had authority to act and sign on behalf of Ja'Drian. No testimony or evidence support Nutrien Ag's accusation that Defendant knew in 2017 that listing Ja'Drian as the "producer" on the NAP application was wrong. To the contrary, the unrefuted evidence shows that Defendant first learned that his practice of submitting NAP applications in others' names was improper in

---

[17] *Harris v. Jayo (In re Harris)*, No. 19-11286, 2021 WL 2946295, at *3 (11th Cir. July 14, 2021) (citing *Sec. & Exch. Comm'n v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 892 (11th Cir. 1996) (*Bilzerian I*); *see also Grogan v. Garner*, 498 U.S. 279, 291 (1991) (holding § 523 actions are determined by a preponderance of the evidence standard). 11 U.S.C. § 523(a)(2)(A) requires proof of "justifiable, not reasonable, reliance." *Field v. Mans*, 516 U.S. 59, 74 (1995).
[18] *In re Harris*, 2021 WL 2946295, at *3 (quoting 4 Collier on Bankruptcy, ¶ 523.08[1][d] (16th ed. 2018)).

January of 2018, months after he delivered the Assignment to Nutrien Ag. The Assignment was not a false representation.

Fraudulent intent may be inferred from the circumstances, "but if there is room for an inference of honest intent, the question of nondischargeability must be resolved in the debtor's favor."[19] Here, the evidence supports a finding that Defendant was acting with honest intent when he provided the Assignment. Defendant's testimony that he gave Nutrien Ag the Assignment in a sincere effort to pay his debt was credible. The NAP proceeds allocated to the farm in Ja'Drian's name were the only crop proceeds Defendant had not already pledged to another creditor. Nutrien Ag presented no evidence that Defendant had any other source of funds or assets with which he could pay his debt to Nutrien Ag when he executed the Assignment. The fact that Defendant did not apply for or attempt to collect NAP payments in others' names after he understood that doing so was improper supports the finding that Defendant did not provide Nutrien Ag the Assignment with intent to deceive.

---

[19] *In re Smith*, 2021 WL 1234245, at *6 (quoting *Advance Fin. Corp. v. Gross (In re Gross)*, Ch.7 Case No. 09-88462, Adv. No. 10-06065, 2011 WL 3881015, at *6 (Bankr. N.D. Ga. June 10, 2011)) (internal quotation marks omitted).

Similarly, Nutrien Ag has not proven the third or fourth elements: that it relied, justifiably, on anything Defendant wrote or said in conjunction with the Assignment.[20] Justifiable reliance is determined by a subjective standard "based on the creditor's own abilities and knowledge, or the knowledge that [the creditor] should have from the facts that are available to [it]."[21] Nutrien Ag may have relied on Defendant's representation that he was acting for Ja'Drian when he signed the Assignment as "POA."[22] But Nutrien Ag's claim that it justifiably relied on the Assignment to its detriment is unavailing. First, the Agreement that has governed the business relationship between Nutrien Ag and Defendant since 2012 names only Defendant as the "Customer." Nowhere on that document does Ja'Drian's name appear. For that reason alone, Nutrien Ag was, at minimum, on inquiry notice that something was awry when its representative saw that Defendant

---

[20] In its Complaint, Nutrien Ag alleges that it "relied" on the Assignment, ECF No. 43, ¶ 14; that it "reasonably relied" on Defendant's "misrepresentations and lack of disclosure of material information," *id.*, ¶¶ 23, 30, and that its reliance was "actual, justifiable, and/or reasonable," *id.* ¶ 31. In Count IV, Nutrien Ag also alleges that it "reasonably relied" on the written statements within the Assignment pursuant to 11 U.S.C. § 523(a)(2)(B). *Id.* ¶ 39.

[21] *Vision Bank v. McDowell (In re McDowell)*, Ch. 7 Case No. 11-30218PNS3, Adv. No. 11-03032-WSS, 2012 WL 1569630, at *3 (Bankr. N.D. Fla. May 3, 2012) (quoting *Street v. Wilken (In re Wilken)*, 377 B.R. 927, 933 (Bankr. M.D. Fla. 2006)) (internal quotation marks omitted); *accord City Bank & Tr. Co. v. Vann (In re Vann)*, 67 F.3d 277, 283 (11th Cir. 1995).

[22] Pl. Ex. 1, at p. 2, ECF 93-1 (Block "12B. Title/Relationship of the Individual if Signing in a Representative Capacity;" hand-written, "POA.").

signed the Assignment as "POA" for Ja'Drian. Ja'Drian was not Nutrien Ag's customer. Second, Nutrien Ag and its predecessors have been in the business of providing supplies to farmers like Defendant for a very long time.[23] Despite its experience, its knowledge of the farming industry in general, and its familiarity with Defendant's farming operation in particular, Nutrien Ag accepted the Assignment even though Defendant did not sign it for himself.

Finally, Nutrien Ag did not prove the fifth element: causation. The parties here agree that had Defendant not given the Assignment, Nutrien Ag's remedy was to sue. But Nutrien Ag did not present evidence that the ability to sue Defendant in 2017 had any value whatsoever. In fact, the testimony shows that had Nutrien Ag sued Defendant in July of 2017 rather than accept the Assignment, it would likely have collected nothing—all of Defendant's crops were under lien to other lenders, including Trinity Bank for a $1.1 million operating loan. Any judgment lien obtained by Nutrien Ag could only have attached to Defendant's

---

[23] *The Ag Retailer of the Future*, Nutrien Ag Solutions, https://www.nutrienagsolutions.com/about-us (last visited July 16, 2021) ("Though the Nutrien Ag Solutions name is still relatively young, the company can trace its roots to predecessors that began operating as early as 1859."). The Court takes judicial notice of the fact that this text appears on Nutrien Ag's website. Fed. R. Evid. 201(b)–(c); *Bryant v. Ford*, 967 F.3d 1272, 1275 (11th Cir. 2020)).

crops or NAP proceeds behind Trinity Bank's prior perfected security interest.

In a recent case with similar facts, the Bankruptcy Court for the Northern District of Georgia denied summary judgment on a creditor's § 523(a)(2)(A) claim because the creditor did not address the existence of collection remedies.[24] In so doing, the court stated:

> With regard to a debt for a fraudulently induced forbearance, the creditor must prove that [1] it had valuable collection remedies at the time of the misrepresentation, [2] it did not exercise those remedies based upon the misrepresentation, and [3] that the remedies lost value during the extension period. [25]

In the case at bar, the trial testimony made clear that: Defendant owed Nutrien Ag over $100,000.00; the parties discussed how Defendant was going to pay; Defendant offered Nutrien Ag an interest in NAP proceeds from a farm he was operating; and Nutrien Ag accepted the Assignment with the hope and expectation of getting paid. The fact that Defendant signed the Assignment as "POA" for Ja'Drian was essentially irrelevant to Nutrien Ag.

---

[24] *Lenox Pines, LLC v. Smith (In re Smith)*, Ch. 7 Case No. 17-67324-LRC, Adv. No. 18-05005-LRC, 2021 WL 1234245, at *7 (Bankr. N.D. Ga. Mar. 31, 2021).
[25] *Id.* at *6 (quoting *Ojeda v. Goldberg*, 599 F.3d 712, 718 (7th Cir. 2010)) (internal quotations omitted).

## B. Nutrien Ag has not proven that the debt arose as a result of Debtor's willful or malicious injury.

In Count III, Nutrien Ag asserts a claim based on 11 U.S.C. § 523(a)(6), which provides: "[a] discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ."[26] The U.S. Supreme Court has interpreted "debt for" to mean "debt as a result of," "debt with respect to," "debt by reason of," and other similar phrases.[27] In *SE Prop. Holdings, LLC v. Gaddy*, the Eleventh Circuit found that since the debt was incurred *before* the alleged fraud and arose from breach of contract and *not* from a willful and malicious injury, plaintiff's argument that the debt was excepted from discharge failed as a matter of law.[28]

As in *Gaddy*, the debt here originated before Defendant gave Nutrien Ag the Assignment. Nutrien Ag's allegation—that Defendant's execution of the Assignment constitutes a willful and malicious injury—fails as a matter of law to state a cause of action under § 523(a)(6).[29]

---

[26] 11 U.S.C. § 523(a)(6) (2019).

[27] *Cohen v. De La Cruz*, 523 U.S. 213, 220 (1998).

[28] *SE Prop. Holdings, LLC v. Gaddy (In re Gaddy)*, 977 F.3d 1051, 1058–59 (11th Cir. 2020), *cert. denied*, No. 20-1076, 2021 WL 1520807 (Apr. 19, 2021).

[29] Unlike § 523(a)(2)(A), § 523(a)(6) does not encompass debts for "extensions of credit," like

### C. Nutrien Ag has failed to state a claim that Defendant's debt is nondischargeable as a materially false written statement about his or an insider's financial condition.

In Count IV, Nutrien Ag asserts that its claim is nondischargeable under 11 U.S.C. § 523(a)(2)(B). That Section provides:

> A discharge under . . . this title does not discharge an individual debtor from any debt—
> (2) for . . . an extension, renewal, or refinancing of credit, to the extent obtained by . . .
>> (B) use of a statement in writing—
>>> (i) that is materially false;
>>> (ii) respecting the debtor's or an insider's financial condition;
>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>> (iv) that the debtor caused to be made or published with intent to deceive . . . .[30]

Nutrien Ag urges that the Assignment was a materially false statement in writing that Defendant had a valid right to the NAP proceeds from the farm in Ja'Drian's name.[31] The evidence does not support such a finding.

No evidence supports a finding that Defendant's representation in the Assignment that he was signing on behalf of Ja'Drian pursuant to a power of attorney was materially false, as required by § 523(a)(2)(B)(i).

---

a forbearance in any event.

[30] 11 U.S.C. § 523(a)(2)(B) (2019).

[31] ECF No. 43, ¶ 38.

Defendant's unrefuted testimony was that he always signed documents and handled JaDrian's affairs the same way. Further, nothing in the Assignment amounts to an affirmative representation by Defenant of anyone's financial condition. The representations in the Assignment are that the producer (Assignor) was Ja'Drian, that $125,000 of NAP proceeds for 2017 on land located in Jackson County, Florida was assigned to Nutrien Ag's predecessor, Crop Production Services, and that Defendant signed the Assignment in a representative capacity for Ja'Drian.

Even if the Court were to rule that the Assignment constitutes a statement in writing about Defendant's or Ja'Drian's financial condition, Nutrien Ag failed to prove Defendant had any intent to deceive when he delivered the Assignment to Nutrien Ag, as required by § 523(a)(2)(B)(iv).

Nutrien Ag's reliance on the Eleventh Circuit's ruling in *Appling v. Lamar, Archer & Cofrin, LLP*[32] is misplaced. In *Appling*, the debtor owed his lawyers over $60,000.00 in fees and was unable to keep current on his legal bills.[33] To induce his lawyers to continue representing him, the debtor told his lawyers he was expecting an income tax refund of

---

[32] *Appling v. Lamar, Archer & Cofrin, LLP (In re Appling)*, 848 F.3d 953 (11th Cir. 2017).
[33] *Id.* at 955.

approximately $100,000.00.[34] In reality, by the time the debtor made that representation he and his wife had already received and spent the tax refund.[35] The bankruptcy and district courts agreed that the debtor in *Appling* lied about the tax refund.[36] The Eleventh Circuit in *Appling* held, in part, that a debtor's statement about a single asset may be a statement respecting a debtor's financial condition.[37] The facts here are distinguishable from those in *Appling*.

## CONCLUSION

The record is devoid of evidence showing that Defendant's debt to Nutrien Ag is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), or (a)(6). Final judgment shall be entered in favor of Defendant and against Nutrien Ag on all counts of the Amended Complaint.

DONE AND ORDERED ON ___July 20, 2021_____.

KAREN K. SPECIE
Chief U.S. Bankruptcy Judge

cc: all parties in interest

---

[34] *Id.*
[35] *Id.*
[36] The district court affirmed the bankruptcy court's ruling that the debtor made a materially false statement with intent to deceive, on which the creditor justifiably relied. *Id.* at 956–57.
[37] *Id.* at 961.